DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | CASE NO. 1:07 CR 338 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| Shaneka Pittman, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The defendant was found guilty following a jury trial of count 1 charging a violation of 21 U.S.C. § 846, conspiracy to possess with the intent to distribute cocaine and PCP; a violation of 21 U.S.C. § 841(a)(1)and (b)(1)(A), possession with the intent to distribute cocaine and count 23 charging a violation of 21 U.S.C. § 843(b), unlawful use of a communication facility to facilitate the commission of a drug trafficking offense.

The Court ordered a presentence report.  Counsel for the defendant has filed with the Probation Department a series of objections as follows:

Objection No. 1

The defendant objects to paragraph 26 of the Pre-Sentence Report describing the offense conduct and which states that the defendant, Shaneka Pittman enlisted couriers to transport cocaine, PCP and marijuana into the Cleveland area for distribution.  The wire conversation referenced does not support this allegation contained in this paragraph.

Paragraph 26 of the presentence report declares:

(1:07 CR 338)

> As a result of the investigation, on May 5, 2007, a telephone
> wiretap was initiated. Arkeefe Sherrills was identified as the head
> of the conspiracy, who, aided by his wife, SHANEKA
> PITTMAN/SHERRILLS and Richard White enlisted multiple
> couriers to transport cocaine, PCP, and marijuana into the
> Cleveland area for distribution. The main Cleveland based
> distributee was identified as Derrick Wade.

### The Court's Ruling

Whether the wire conversation supports the allegation is not material. The testimony of co-defendants Cynthia Johnson, Alicia Bryant, Canie Gibson, Marlene Brown, Janice Johnson and Jarese Pannell supported the proposition that the defendant enlisted couriers to transport cocaine into Cleveland for distribution. The objection is denied.

### Objection No. 2

> The defendant further challenges the contents of paragraph 33 of
> the Pre-Sentence Report which alleges that Shaneka Pittman hired
> couriers and ran the drug business while he (Arkeefe Sherrills) was
> incarcerated in California and Ohio. The testimony adduced in
> trial never supports this allegation.

Paragraph 33 of the presentence report declares:

> The trial established that starting in 2004, Arkeefe Sherrills and
> SHANEKA PITTMAN began to bodycarry kilos of cocaine by
> putting it between their legs and securing it with a girdle. They got
> to a point in time where they were successful enough that they
> began to hire others to carry the drugs since that was the most
> dangerous time. When Arkeefe Sherrills was jailed in California
> and Ohio, SHANEKA PITTMAN kept the conspiracy going.

### The Court's Ruling

The testimony of the cooperating co-defendant couriers supports the proposition that Shaneka Pittman continued with the drug conspiracy while the defendant Arkeefe Sherrills was

(1:07 CR 338)

incarcerated.

### Objection No. 3

> The defendant further challenges the allegations contained in
> paragraph 36 of the Pre-Sentence Investigation Report that said
> that the kilos were provided to them (couriers) by Richard White
> who then delivered them to Shaneka Pittman.  It is our specific
> contention that the kilos of cocaine provided to the couriers were
> never delivered to Shaneka Pittman.

Paragraph 36 of the presentence report declares:

> On October 5, 2006, couriers Canie Gibson and John Hawkins
> were surveilled after landing in Cleveland.  They were picked up
> by SHANEKA PITTMAN and driven to a downtown hotel.
> According to testimony, the kilos were provided to the couriers by
> co-conspirators Richard White usually and were delivered to either
> Arkeefe Sherrills, SHANEKA PITTMAN, or Derrick Wade.

### The Court's Ruling

The issue of whether the kilos of cocaine were delivered directly to the defendant Shaneka Pittman, by the conduct of the couriers, is not relevant in that the overwhelming testimony of the co-defendants during the trial of the defendant clearly indicated that the defendant Shaneka Pittman played a major role in the conspiracy which included using female couriers to transport and deliver cocaine to the major players in the conspiracy including Sherrills, Richard White and Derrick Wade.

### Objection No. 4

> The defendant further objects to paragraph 37 which alleges that
> Shaneka Pittman provided the kilograms to the couriers on October
> 10, 2006.  It is non-sensical [sic] to conclude that the couriers who
> left Detroit on the 8th of October without drugs and/or money did
> not get any drugs or money out west from Richard White or
> Arkeefe Sherrills.  The evidence adduced in trial undoubtedly

3

(1:07 CR 338)

> showed that the couriers involved in this conspiracy were supplied with drugs in California or Las Vegas and transported the drugs to Cleveland. The evidence further showed that monies would be transported to California to purchase the cocaine.

Paragraph 37 of the presentence report declares:

> On October 10, 2006, four couriers who had been driven to Detroit on October 8, 2006, were picked up in Detroit by SHANEKA PITTMAN and when their vehicle was stopped, approximately six kilograms of cocaine were recovered. Two of the couriers testified and advised that SHANEKA PITTMAN had provided the kilograms of cocaine to them after they were picked up in Detroit. SHANEKA PITTMAN presented an Ohio drivers license in the name of Alexis Price (Alexis Price is a 9 year old daughter of SHANEKA PITTMAN)

### The Government's Response

Counsel for the government have responded to the defendant's objection with the following summary of the testimony:

> Defendant Pittman's objection is not supported by the trial testimony from two of the couriers who were involved in this incident. While this activity was somewhat inconsistent with the drug conspiracy's typical modus operandi, the description above is directly supported by trial testimony from both Jarese Pannell and Aleshia Bryant. Jarese Pannell testified that she thought it was "unusual" that she did not carry anything on the trip from Las Vegas back to Detroit, but she also testified that she "never asked too many questions." (Testimony of Jarese Pannell, Trial Tr. at 511, 509). When she and the other three couriers returned back to the airport in Detroit from Las Vegas, they were met by Shaneka Pittman who gave them gray duct-tape wrapped packages to carry. (Id. at 511-13). Pannell's testimony was entirely consistent with that of Aleshia Bryant. (testimony of Aleshia Bryant, Trial Tr. at 575-76).

### The Court's Ruling

The defendant's objection to paragraph 37 is denied.

(1:07 CR 338)

### Objection No. 5

>Defendant objects to the allegations contained in paragraph 38 of the Pre-Sentence Investigation Report regarding her conduct of having packages delivered to her, or providing money to the couriers on the January 18th trip and other trips as well.

Paragraph 38 of the presentence report declares:

>On January 18, 2007, three couriers were stopped after landing in Columbus and being picked up by co-conspirator Donald Littleton. Each courier had approximately a kilogram of cocaine between their legs inside a girdle.  They identified Arkeefe Sherrills, and SHANEKA PITTMAN as the people they had received packages of cocaine from or had given money packages to on this and other trips.

### The Government's Response

The government's response to the defendant's objection to paragraph 38 is set forth as follows:

>...While the couriers involved in the January 2007 trip did not testify that they interacted with her on that particular trip, their testimony showed Defendant Pittman's involvement with those couriers at other times during the time of the conspiracy.
>
>Two of the couriers form the January 18th trip, Marlene Brown and Janice Johnson, testified at trial.  Marlene Brown was a courier who testified that when she joined this conspiracy, her first trip was from the Cleveland area to Las Vegas.  While in Las Vegas, she and another courier were met at the hotel by "Duke" and his wife, who she identified as Defendant Shaneka Pittman. (Testimony of Marlene Brown, Trial Tr. at 650-53).  Defendant Pittman told Brown what she would have to do and took her shopping for a girdle and clothing.  (Id. at 651).  Defendant Pittman told Brown, "how we supposed to walk like, you know, like paying attention to each other, and like just -- you know what I am saying, like the drugs we were carrying, I didn't know what I was supposed to do, so she kind of had to like instruct us how to wear it, how to walk, just everything."  (Id. at 652).  Later,

5

(1:07 CR 338)

> Defendant Pittman and Sherrills, "told us how to put [the drugs] on, meaning between our legs, you know, inside the girdle. Make sure our skirts was long enough and they were okay. Boots, shirts, everything, and we kind of walked to make sure we were comfortable with it and that was like pretty much it. You know, me and Janaye both tried it on and that was it." (Id. at 653-54).

> Similarly, Janice Johnson testified that she met the defendants on a trip to Las Vegas. (Testimony of Janice Johnson, Trial tr. at 717-18). Just like Marlene Brown, Janice Johnson testified that she was told what to do and was taken shopping for a girdle and long skirt by Defendant Pittman. (Id. at 719-20). Johnson became nervous about her involvement and told the defendants that she was not willing to carry the packages of cocaine back. Despite Johnson's reluctance, the defendants still had her try on a package of cocaine while wearing the girdle and skirt. (Id. at 721-22). Shaneka Pittman and Sherrills had a bag with the packages of cocaine, and Johnson specifically recalled Pittman wearing gloves when she handed her the brick of cocaine to try on. (Id. at 722-24).

### The Court's Ruling

The government's response accurately summarizes the testimony. The defendant's objection is denied.

### Objection No. 6

> Defendant specifically objects to paragraph 39 which states that she stayed in the apartment that was above Anthony Harris' business.

Paragraph 39 of the presentence report declares:

> Wiretaps and phone calls revealed that Arkeefe Sherrills rented an apartment from Anthony Harris. When arrests and searches were done on May 18, 2007, a loaded handgun was found in this apartment as well as a number of papers which clearly established that Arkeefe Sherrills and SHANEKA PITTMAN stayed there.

6

(1:07 CR 338)

### The Court's Ruling

Anthony Harris testified as the government's witness. His testimony supports the contention that Shaneka Pittman stayed in the Harris apartment. (*See* Harris testimony at page 938, 998-99.) The objection is overruled.

### Objection No. 7

> Defendant specifically objects to paragraph 46 of the Pre-Sentence Investigation Report that claims the defendant's criminal activity involved at least 50 kilograms but less than 150 kilograms of cocaine, and 5 kilograms of PCP, and thus calculation and the conversion numbers are not correct.

Paragraph 46 of the presentence report declares:

> **Base Offense Level:** The United States Sentencing Commission Guideline for violation of 21 U.S.C. § 841(b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1. According to the Offense Conduct section, this defendant's criminal activity involved at least 50 kilograms but less than 150 kilograms of cocaine, and 7 kilograms of PCP. Using the marijuana equivalency tables, 50 to 150 kilograms of cocaine equates to 10,000 to 30,000 kilograms of marijuana (1 gram of cocaine = 200 grams of marijuana) and 7 kilograms of PCP equates to 7,000 kilograms of marijuana (1 gram PCP = 1 kilogram of marijuana). Therefore, the total amount of cocaine and PCP converted to marijuana is between 17,000 to 37,000 kilograms of marijuana. The offense level specified in the **Drug Quantity Table** under U.S.S.G. § 2D1.1(c)(2), sets a Base Offense Level of 36 (10,000 to less than 30,000 kilograms of marijuana) or 38 (30,000 or more kilograms of marijuana).

### The Government's Response

Once again, it is necessary to review the testimony presented by the government during the lengthy trial as it relates to the weight of the cocaine and PCP attributable to the defendant under the teachings of U.S.S.G. § 1B1.3(a)(1)(A) and in particular the teachings of the recent

(1:07 CR 338)

decision in *United States v. Gonzalez*, 501 F.3d 360 (6th Cir. 2007). The Court recognizes that it must make two particularized findings with respect to the quantity of drugs attributable to the defendant, i.e., "(1) that the acts were within the scope of the defendant's agreement and (2) that they were foreseeable to the defendant as set forth in *United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002).

Applying the *Campbell* analysis, the government's sentencing memorandum (Docket No. 533 at pages 34 through 39, attached hereto at Appendix I) adequately reflects that the offense level is to be calculated at 36. Specifically, the Court finds that the acts described in the government's sentencing memorandum were within the scope of the defendant Shaneka Pittman's agreement and that the acts giving rise to the significant quantity of drugs attributable to Shaneka Pittman were reasonably foreseeable to her.

### The Court's Ruling

The Court agrees with the government's analysis and finds that the base offense level is 36.

### Objection No. 8

> The defendant specifically objects to paragraph 47 of the Pre-Sentence Investigation Report that Shaneka Pittman possessed a firearm.

Paragraph 47 of the presentence report declares:

> **Specific Offense Characteristic:** Pursuant to § 2D1.1(b)(1), if a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

### The Court's Ruling

8

(1:07 CR 338)

There is no direct evidence that Shaneka Pittman possessed the dangerous weapon, either at her residence in California at the apartment above the Popular Demand. The defendant's objection is granted.

### Objection No. 9

> Defendant specifically objects to paragraph 49 of the Pre-Sentence Investigation Report in that the defendant was a manager or supervisor of five or more participants in this alleged conspiracy.

Paragraph 49 of the presentence report declares:

> **Adjustment for role in the Offense:** Pursuant to U.S.S.G. § 3B1.1(b), the offense level is increased by three. The defendant was a manager or supervisor of five or more participants in this offense.

### The Court's Ruling

The government has identified four couriers supervised by the defendant Shaneka Pittman. The Court concludes that only two levels should be added for the defendant's role in the offense and under the provisions of U.S.S.G. § 3B1.1(c) finding that the defendant was an organizer and supervisor.

### Objection No. 10

> Defendant further objects to paragraphs 51, 53 and 55 of the Pre-Sentence Investigation Report that claims the defendant's adjusted offense is either 41 or 43. It is our specific contention that the defendant's offense level should start at a level 32.

Paragraphs 51, 53 and 55 of the presentence report declare:

> **Adjusted Offense Level (Subtotal):** **41 or 43**
>
> **Adjusted Offense Level:** **41 or 43**

(1:07 CR 338)

**Total Offense Level:** <u>**41 or 43**</u>

(1:07 CR 338)

## The Court's Ruling

The Court finds that the base offense level is 36 and two levels are added for role in the offense for a total of 38 as the total offense level.

## Objection No. 11

> Defendant specifically objects to paragraphs 59 and 60 of the Pre-Sentence Investigation Report, since it is our contention that the Defendant [sic] participation in the alleged drug conspiracy did not occur within two years from the Defendant's release from custody.

Paragraphs 59 and 60 of the presentence investigation report declare:

> The instant offense was committed less than two years following the defendant's release from custody on March 24, 2003 from the sentence of Unauthorized Use of ID. Pursuant to U.S.S.G. § 4A1.1(e), two points are added.
>
> The total of the criminal history points is 5. According to the Sentencing Table in U.S.S.G. Chapter 5, Part A, 5 criminal history points correspond to Criminal History Category III.

## The Court's Ruling

The Court finds that the flight records from Southwest Airlines demonstrates that the defendant traveled more than a dozen times between California and Cleveland from May, 2004 through March 16, 2005. Consequently, the Court finds that the defendant's criminal history is III. The defendant has a single conviction in California for what is referred to as the unauthorized use of a personal I.D. She received three points for that conviction. (The court sua

(1:07 CR 338)

sponte, on defendant's motion) determined that the criminal history category III overstated the seriousness of the defendant's criminal record and departed downward one level to criminal history II which calls for a sentencing range of 262 to 327 months.**)**

    IT IS SO ORDERED.

| | |
|---|---|
|  July 30 , 2008 | /s/ David D. Dowd, Jr. |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |